IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:07CR144 |
| v. | : | |
| CLYDE BENNETT II, | : | PLEA AGREEMENT |
| Defendant. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

It is hereby agreed by and between defendant **CLYDE BENNETT II,** individually and through his attorney, David C. Greer, Esq., and the United States, by counsel as follows:

1. The defendant, **CLYDE BENNETT II,** will enter a plea of guilty to a one-count Bill of Information alleging a violation of 31 U.S.C. § 5324(a)(3) and (d)(2) and § 2, to wit: structuring financial transactions. Once said guilty plea is entered and not withdrawn, the United States Attorney for the Southern District of Ohio agrees not to file any additional criminal charges against defendant **CLYDE BENNETT II** for any other violations which he was aware of at the time this plea is entered. The maximum statutory penalty that defendant **CLYDE BENNETT II** is subject to pursuant to his plea of guilty on Count 1 of the Bill of Information is imprisonment for a period of 10 years, a fine of $500,000, supervised release for a period of 3 years and payment of a $100 special assessment to the Clerk of Court as required by 18 U.S.C. § 3013.

2. The defendant understands that this Agreement, which permits a guilty plea to Count 1 of the Bill of information, requires that he abide by each term of this Agreement. The defendant further understands that if he makes any statement that is materially false in whole or in part, or otherwise fails to comply with any term of this Agreement, the United States has the right to declare

1



this Agreement null and void, and to prosecute the defendant to the full extent of the law.

3. The United States Attorney is prepared to recommend to the Court, that as of the time of the execution of this Plea Agreement the defendant has accepted full responsibility for the criminal offenses to which he has agreed to plead guilty. If the defendant continues to accept responsibility through the time of sentencing, the Government will file a motion pursuant to United States Sentencing Guidelines (U.S.S.G.) §3E1.1(a) and (b) indicating to the Court that the defendant has accepted responsibility for his crimes and timely notified the Court of his intention to plead guilty. As a result, the Government will recommend that the defendant be given a 3 point downward adjustment. The defendant further understands that the Court is not bound to accept these recommendations of the United States. If the Court were to refuse to accept said recommendations, the defendant understands that he will not be allowed to withdraw his guilty plea.

4. The defendant is aware that the U.S.S.G. is no longer mandatory in determining his sentence. However, the defendant also understands that said guidelines and policy statements will be given due consideration by the Court, in conjunction with all other sentencing factors set forth in 18 U.S.C. §3553(a), in determining an appropriate sentence, pursuant to United States v. Booker, 543 U.S. 220 (2005). The defendant is further aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set forth for the offenses to which the defendant pleads guilty. The defendant is aware that the Court has not yet determined a sentence. The defendant is also aware that any estimate of the probable sentencing range under the U.S.S.G. that the defendant may have received from his counsel, the United States, or the Probation Office, is merely a prediction, not a promise, and is neither binding upon the United States, the Probation Office, or the Court. The United States further makes no promises or representations concerning

2



what sentence the defendant may ultimately will receive. The defendant further understands that he cannot withdraw his guilty plea based upon the actual sentence imposed by the Court.

5. The defendant understands that this Agreement does not protect him from any later prosecution for perjury, making a false statement, obstruction of justice, or any other such criminal charges based on conduct that may occur after the date of this Agreement.

6. No promises have been made to the defendant that he will receive probation or a lighter sentence on account of his decision to plead guilty. Sentencing is left to the sound discretion of the Court. The defendant understands that the Court may, or may not choose to impose a sentence based upon the applicable sentencing range established under the U.S.S.G. for the offenses charged in the Indictment. The defendant has thoroughly reviewed with his attorney how the U.S.S.G. might apply to this case. The defendant understands that he does not have the right to withdraw his guilty plea if the Court chooses to apply the U.S.S.G. including upward departures or otherwise imposes a sentence that is higher than expected. The defendant consents to the judge determining by a preponderance of any reliable evidence including hearsay, all aspects of the defendant's sentence. The defendant further understands that the matter of sentencing is reserved solely to the Court's discretion. As a result, the Court could lawfully impose the maximum statutory penalty.

7. The parties hereby state that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the readily provable actual offense behavior, and that the acceptance of this Agreement by the Court will not undermine the statutory purposes of sentencing.

8. The defendant agrees to pay a $100.00 special assessment to the Clerk of the United States District Court no later than the date of his sentencing.

9. By signing this document, the defendant acknowledges the truthfulness of the attached Statement of Facts.

3



10. If, in the opinion of the United States Attorney for the Southern District of Ohio, the defendant **CLYDE BENNETT II** renders "substantial assistance" within the meaning of U.S.S.G. § 5K1.1, the United States will file a motion pursuant to this provision. The defendant acknowledges that, under the law and the terms of this plea agreement, the United States retains sole and complete discretion in determining whether a departure motion based on "substantial assistance" will be filed. If such a motion is filed, the defendant understands that the Court is not obligated to grant said motion and thereby reduce the defendant's sentence. If the defendant refuses to testify or otherwise provide complete, truthful cooperation, the Government may seek to set aside the defendant's plea and seek a new Indictment in this case. The defendant understands that the duty to continue to provide complete, truthful cooperation may be imposed by the Court as a condition of probation or supervised release. If the Court elects to impose such a condition, the defendant understands that his probation or supervised release could be revoked if he fails to continue to provide truthful, complete cooperation to the United States. Nothing that the defendant communicates to the Government in the course of providing "substantial assistance" shall be used to enhance his sentence. The defendant understands that he will not be allowed to withdraw his guilty pleas if the United States does not file, or the Court does not grant a "substantial assistance" motion. The defendant understands that Federal Rule of Criminal Procedure 35(b) allows the Government to file a "substantial assistance" motion within one year after the date sentence is imposed. The Government will consider the filing of a Rule 35(b) "substantial assistance" motion if the defendant fails to provide substantial assistance, but later satisfies the requirements of § 5K1.1. The United States retains sole and complete discretion to determine whether a Rule 35(b) "substantial assistance" motion should be filed. It is understood that the defendant **CLYDE**

4



**BENNETT II**, has a professional obligation not to reveal information received in an attorney-client relationship in the absence of a written waiver from the client and that his cooperation will be necessarily limited to information received outside the attorney-client relationship and information received from clients who provide the United States with written waivers of privilege.

11. This Plea Agreement does not resolve any civil liability of the defendant for tax, interest, and penalties relating to income from any offense of conviction or any other source. The defendant agrees that as a condition of this Plea Agreement, and as a condition of any term of probation or supervised released imposed, he will give complete cooperation to federal, state, and local tax authorities in the determination of his taxable income and determination and payment of any applicable tax, interest, and penalties, including any fraud penalty. The defendant agrees, if requested by the United States, to submit a joint application with the United States to the Court for an order authorizing the United States to disclose under Rule 6(e), Fed.R.Crim.P., to federal, state, and local tax authorities any documents that are arguably matters occurring before the grand jury which are pertinent to the defendant's liability and obligation to pay any tax, interest, and penalties. The defendant agrees as part of his complete cooperation to file accurate tax returns for himself, amending returns for 2003 and 2004 if necessary, within 120 days of entering his guilty plea.

12. The United States Attorney for the Southern District of Ohio agrees not to pursue any claims of civil or criminal forfeiture against either the defendant **CLYDE BENNETT II** based upon any criminal conduct occurring prior to the date of this plea agreement which he was aware of at the time this plea is entered.

13. This written Plea Agreement embodies all of the agreements and understandings reached between the United States Attorney for the Southern District of Ohio and the defendant. No extraneous conversations, discussions, understandings, or other documents shall be considered part of this Agreement. By signing this Plea Agreement, defendant **CLYDE BENNETT II** acknowledges that he has fully discussed all of its terms with his attorney and understands and accepts those terms

14. This agreement binds only the United States Attorney's Office for the Southern District of Ohio and no other federal, state or local prosecuting authority.

GREGORY G. LOCKHART
United States Attorney

_Dwight K. Keller_       _14 Aug 07_
DWIGHT K. KELLER      Date
Assistant United States Attorney

_[signature]_      _8-13-07_
DAVID C. GREER, ESQ.      Date
Attorney for CLYDE BENNETT II

_[signature]_      _8/13/07_
CLYDE BENNETT II, Defendant      Date

6

## STATEMENT OF FACTS

## UNITED STATES vs. CLYDE BENNETT II

### FACTS RELEVANT TO COUNT 1 OF THE BILL OF INFORMATION

Since 1992, the defendant CLYDE BENNETT II has been a licensed attorney in the State of Ohio practicing in the areas of criminal defense, criminal law and white-collar crime in both state and federal courts.

Between on or about August 15, 2002 and January 15, 2003, pursuant to 18 U.S.C. § 5313, certain federal regulations, namely 31 C.F.R. §§ 103.11 and 103.22 required domestic financial institutions to prepare and file a FINCEN Form 104 whenever they were involved in the payment, receipt or transfer of U.S. currency exceeding $10,000. Being fully knowledgeable of said legal requirements, the defendant CLYDE BENNETT II unlawfully structured various cash transactions during a 5-month period totaling approximately $124,300 with various domestic financial institutions located within the Southern District of Ohio for the express purpose of evading said reporting requirements. A certain unspecified portion of these currency transactions originated from income the defendant CLYDE BENNETT II received which he improperly failed to report and account to the Internal Revenue Service.

Among the currency transactions engaged in by the defendant CLYDE BENNETT II were the following:

> Between on or about September 23, 2002, and September 27, 2002, defendant CLYDE BENNETT II structured $32,000 in currency by depositing $8,000 in currency with Fifth Third Bank Branch located at 916 Main St., Cincinnati, Ohio; by depositing $7,000 in currency at the Fifth Third Bank Branch located at 38 Fountain Square, Cincinnati, Ohio; by depositing $3,000 in currency at the Fifth Third Bank Branch located at 38 Fountain Square, Cincinnati, Ohio; by depositing $4,000 in currency at the Fifth Third Bank Branch located at Fifth and Broadway,



1

Cincinnati, Ohio; by depositing $4,000 in currency at the Fifth Third Bank Branch located at 38 Fountain Square, Cincinnati, Ohio; and by depositing $6,000 in currency at the Fifth Third Bank Branch located at 38 Fountain Square, Cincinnati, Ohio each into another individual's savings account # XX-XX1635.

The Fifth Third Bank is considered a domestic financial institution under federal law. Each of the Fifth Third Bank branches described above lie within the geographical boundaries of the Southern District of Ohio. The defendant CLYDE BENNETT II recognizes that his conduct in this matter was in violation of 31 U.S.C. § 5324. He accepts full responsibility for his actions.